My name is Pat Riskin, along with trial counsel Jerry Moberg and Michael McFarland. I represent Sergeant Dopke in this matter and am very pleased to be here this morning. Mr. Moberg and I are splitting the time allotted for argument, and so, as awkward as it may appear, I will be attempting to limit my opening remarks to five minutes so I can reserve some time for rebuttal. Well, many of the issues overlap, so this should be okay. Thank you. Getting right to the point, the court is well aware of the facts of the case and the issues of the case. The trial record is extensive, fact-intensive case. We are challenging this verdict on a couple of different bases. There are several in the brief, but I'll touch on a couple of them today. First of all, to dispense with the motion that was filed, we're advocating for our client. The court knows that. That's why we're here on appeal, is to challenge the verdict, to challenge the sufficiency of this verdict under the evidence. So that's really all I want to say about a motion for sanctions that was filed. It is without merit. Now, in this case, there are two, in my opinion, there are two really relevant inquiries. First of all, under the law that applies to a Fourth Amendment seizure, was there an intent to seize? And secondly, whether or not the evidence supports the verdict. We have presented to the court a variety of arguments under qualified immunity and under strict analysis under the Fourth Amendment of seizure, unlawful seizure. And it really boils down to what I've said before is a very fact-intensive case. What really happened here? And that's why we have to get into an analysis of the testimony of these witnesses themselves. Is part of your argument that it's not a seizure because they seized the wrong person? That's part of it, Your Honor, yes. That doesn't fly. Well, the case law that we have cited, Your Honor, and that's a part of it. I'm not saying that's the total argument. That's a part of it. The case law that we have cited, and there are a good number of cases from throughout the country, that under circumstances similar to or identical to this, if a dog, a canine, accidentally attacks somebody, which is what happened in this case, there's no doubt that Mr. Rogers was attacked. Well, he didn't accidentally attack him. He was ordered to attack. There's no evidence in the case that he was ordered to attack anyone. Well, they certainly let him loose. And you're thinking that maybe the leash was tangled up or something. Yes, because that's the testimony that was presented at trial, and there's no testimony otherwise. If the jury believed that testimony, do you think that the jury would have found in favor of the plaintiff? That the testimony regarding the tangling of the leash? Yes. Your Honor, I think what happened here. Could you answer my question first? Yes. If the jury had believed the testimony about tangling the leash, then it would not have found in favor of the plaintiff on this particular claim. But one of the things that we pointed out in our brief is the inconsistency of the various claims under the facts that are presented, battery, false arrest, false imprisonment, unlawful seizure, and the way that we've tried to explain these to the court in our appeal brief. There's an obligation to try to reconcile what the jury has done to find that it's not truly inconsistent. There is, Your Honor. And that's right. And that's where we get into the dog bite statute. Because if you take all of these various claims that were presented, which are all basically intentional torts, although the Fourth Amendment claim isn't necessarily, I don't think it's necessarily an intentional tort, but it operates similarly, they all require unreasonable conduct by the officers, some sort of intentional act. And the evidence in this case demonstrates that there was no intent by these officers, any of the officers, and particularly my client, Sergeant Dopke, to loose this dog to attack anyone. Counselor, could I ask you what this testimony means, then? Sergeant Dopke testified that he instructed Cone to use Deke, a biting hole canine, to track and apprehend the suspect. Yes. What does that testimony portend? It was explained during the trial, and I believe it was Expert Note, or Nope, who testified that track and apprehend is not necessarily bite. Okay, track and apprehend is to find and hold, but not bite, necessarily. How do you hold without biting if you're a dog? Your Honor, I think if a dog was on a leash and he was cornered in the backyard in the corner of a fence, I don't think that the suspect is going to move. That's an apprehension. The suspect's ability, the liberty, is stopped. I would suggest that to the court. The suspect could be hiding under a car and choose not to move because the dog is right outside, which could have been the situation in this particular driveway. Counselor, how do you then explain Officer Cone's testimony? He said when Deke was released off leash, he was to follow that scent to the source and bite down on that source as he was trained and expected to do. He did not know that Mr. Rogers was in the backyard. Deke was acting, if we'll put it this way, squirrely in this driveway, and there were a variety of different places in this driveway for a suspect to hide. They were concerned about that. They were concerned about the trailer. They were concerned about what might be under the trailer, under the boat. And so, therefore, Deke was – once again, we go to pages 294 through 296, which Officer Cone was also explaining was why they were trying to back out of there, and that took untangling the leash. Well, but that's a factual question, and apparently the jury didn't believe it because in order to have found the way they found, the jury would have had to have believed that he loosed the dog to go into the backyard and search out the source. And my understanding is once all of that happened and they all got back there, they found this guy attempting to extricate himself from the dog, in which case they all jumped on him and had at him. Isn't that right? Yes. Okay. There's no testimony to back any of that up, though, Your Honor. That's the point. We have a bunch of – there's no testimony that the dog was ordered to attack anyone. No, but if you send a dog in the backyard to go after somebody that you think might be back there, and then as circumstantial evidence that that's what you did, once you get back there, you don't call the dog off. What you do is you jump on the guy, and when he's struggling to get himself free, you're pounding him with implements. I mean, the police officers hit him. They didn't jump in there and say, wait a minute, get the dog off, wrong guy. They didn't know it was the wrong guy. That's one of the points. It is. It is, absolutely. But if the dog weren't intended to attack this person and bite him, why wouldn't they tell the dog to get off of him? Because Mr. Rogers was fighting with the dog, and they were trying to subdue Mr. Rogers at that time, because at that time they didn't know that he wasn't the suspect. But what difference does it make if he was or wasn't the suspect? If the dog was apprehended to – if the dog was directed to apprehend what they thought was the suspect, then it doesn't matter if the person was in fact not the suspect. The intent is still there. If there was that intent, but the dog was not ordered to attack anyone. Why didn't they call the dog off instead of hitting the guy with slats? Your Honor, as I understand it, it is the procedure to subdue the subject and then call the dog off. And Mr. Rogers was fighting back, so they subdued him. That's inconsistent with your argument that there was no order to attack. I'm talking about the police officers, Your Honor. There was no intent for the dog to attack Mr. Rogers or anyone else. Yeah, but you have – on the one hand, you're saying they didn't know that this wasn't the suspect, i.e., they thought it might well be the suspect. Yes. And on the other hand, you're arguing, well, they had no intention of going after – well, of course they were going after the suspect. To track and apprehend. Sure. Yes, but not to bite. What the dog did. No, the dog attacked Mr. Rogers. But they did not – they did not intend for him to attack a person. Well, then why didn't they call the dog off? Your Honor, I don't know. Okay. And also, it seems very odd that this was just a misdemeanor at best of the suspect. Why aren't they going through all this? Your Honor, the original Troy suspect didn't stop. These officers – it's in the transcript. These officers are trained that if a misdemeanor suspect doesn't stop and, in fact, eludes, there's a good chance that there's something else to hide. And so, therefore, they're going to try to find this person and discuss what's going on. In this particular instance, as the facts developed at that time, Troy went over the fence, the dog scented the fence, now they've got somebody who may or may not be naked running around in the neighborhood at 1 o'clock in the morning. The police department policy was that officers will not maintain a pursuit where the initial violation is an infraction or misdemeanor. That was in the record. It is in the record, Your Honor. But then we've got the concern about this person who has fled over the fence and nobody knows where he is or where he went at 1 o'clock in the morning. If I may turn it over to Mr. Moberg at this point. All right. Thank you. Thank you. Please court and counsel, my name is Jerry Moberg. It's my privilege to represent Officers Cone, Bonelli, and Quackenbush, who were truly in good faith chasing what they believed to be a dangerous person in the neighborhood. And I don't think there's any question about that. They come up to the area where there was a confined area that the dog was in. They release the dog off the leash because of an entanglement. There's really no evidence disputing that. And unexpectedly, that dog bolts from that enclosed area, jumps the fence, and contacts Mr. Rogers. I think the problem that we have had in this case from the beginning is the ultimate fact that clouded, I believe, the judgment of the jury, and that is that the dog get an innocent citizen. If, in fact, that had been Troy running through the neighborhood, the analysis should not be any different. What the jury in this case did was held these police officers liable for an intentional tort of an unlawful seizure based on an unexpected negligent act when that dog bolted from that confined area. And there is no question in the record about that. The result may not have been different even if the victim had ended up being Troy because he still had a misdemeanor, which the police department says does not occasion a force to apprehend. So I'm not sure that the result would have been different. Well, if they were only pursuing him for looting the police officer on this little motorbike, probably so. But at that point, he had gone, according to the police officers, this man had run through a private residence, through the backyard, and jumped the fence, and was in some stage of undress. And what crime would that have been? Well, I guess it would have clearly been a trespass to run through somebody's house is not sure. That's still a misdemeanor. It may be. But, Your Honor, in this sense, we have police officers who have this person who we don't know and we're trained to assume could be dangerous at that point loose in the neighborhood. And I don't think there's a citizen that would stand for us saying, well, okay, it's just a misdemeanor. Let this person run through the neighborhood. Well, you said. I mean, that's not the question is what degree of force do you use to apprehend that person and how do you go about apprehending that person that you suspect of at most a misdemeanor? Certainly. Well, I believe they had the right to find him, and that's what they were doing. And then at that point, that's where the breakdown is. That's where I don't believe there was a seizure, because all the cases up to this point where there has been a seizure by a dog, the dog is commanded to seize. In this case, the dog was expected to stay in that area and on its own. To apprehend. To apprehend or locate. But we never get to that because. Counselor, I can't quite understand the argument. They saw the dog and seized the guy. Yes. And don't call him off. Well, at that point, though, the record is clear that because the person they assume was a bad guy is now fighting with the dog and resisting. Well, of course, because the dog is biting him and hurting him. But what the expert said was if you call him off, the dog off, before you take custody of him, then you put the officers at risk. And both experts, both plaintiff and defense experts, agreed that the proper procedure would be to get him into custody first before you call the dog off. Otherwise, there's a no-man's land of the dog is disengaged and the officers are approaching the person at that point who's resisting. They're not approaching him. They're beating him with a. . . Well, they're trying to. . . In all due respect, these officers were trying to get custody of a person who admittedly was resisting their attempts to take him into custody. Whether he knew there were police officers or not, he was resisting. These officers at that point are trained to. . . He wasn't resisting. He was resisting the dog. He was resisting the police officers. He kicked and fought the police officers during the whole time that they were trying to take him into custody. And at that point, the officers' training is to. . . If the jury believed that he was resisting the police officers, do you think that they would have rendered a verdict in favor of the plaintiff? Well, I think the jury couldn't overcome the fact that he was an innocent citizen because if you look at the other verdicts the jury rendered in terms of battery, they did not believe the police officers exercised any excessive force in the battery claim because that's the only defense to the battery claim. They did not believe the police officers acted unreasonably in the false imprisonment or false arrest claims because that would have been the only defense. The jury concluded that the officers were within their rights to do what they did to take him into custody, but they found a seizure, and I think that seizure. . . An excessive force. Well, but. . . And that's where the inconsistency comes in because how can you find a seizure based on excessive force and find no battery, no offensive touching? The only defense to that was that the force was not excessive. And that's where the conflict came. And I think the jury really simply attempted to award a verdict that satisfied their concern that this was an innocent citizen. The other issue is the strict liability. They could have thought that even though there was excessive force, the officers did not intend to exceed the force necessary, but they in fact actually did it, which is how you can reconcile those verdicts. I don't think you can because the defense of excessive force is you have to exceed the appropriate force in either claim. And in a battery claim, whether you intend or not intend, if you don't exceed excessive force in the battery claim, that's inclusive. And that's the only way they could conclude in the battery claim that there was no battery was that force was reasonable. That's the finding that they have. No, no, in battery, it doesn't have to be. . . It's whether or not the contact was offensive. Yes. And then whether it was unreasonable, not necessarily excessive. Right. So it's a little different. What I'm saying is that's a higher standard, actually, in my view. And I think that. . . Maybe. You've exceeded your time. All right. Thank you. Good morning. Good morning. Brian Eiler here on behalf of the Plaintiff Appellees Rogers. This, you have heard, is exactly the reason why I filed a sanctions motion. These defendants have ignored the record, ignored the testimony continually. They refuse to acknowledge their own testimony, their own admissions at trial. They refuse to acknowledge the essential fact of this case, which is Deke was intentionally released according to their own expert, according to Cohn, the dog handler. Yes, I intentionally released Deke. Cohn admitted I didn't have to release Deke. Knope admitted I didn't have to. I intentionally released Deke. The defendants ask this court to rule that Dobke's testimony that Cohn's release of Deke, and I quote, was an unjustified use of force, unquote, is insufficient to uphold an excessive force verdict. The court asks, the defendants ask this court to hold that the issue of whether the defense expert's testimony that the DOJ had recommended in 2001 that bite-and-hold dogs only be used for serious and violent felonies is insufficient to uphold the verdict against Dobke. Counsel, I think the most problematic part of your case is whether or not the verdicts are reconcilable. Could you address that, please? I will. First of all, I would defer to Judge Shea's analysis of the issue, and what I would point out in addition to that is that these defendants did not ask the court, the trial court, to instruct the jury that the claims were the same. They didn't ask the trial court to say, if you find excessive force, you also have to find a battery, or vice versa. And these instructions were different, as Judge Shea went into in some detail, on the issue of intent. And thirdly, it's no accident that the only claim that the jury found in favor of the plaintiffs on was the single claim, the unreasonable search claim, where there was a Brower v. Inyo instruction, telling the jury that it is not a defense if intentional force is applied to an unintended suspect. That instruction was given to the jury only on the unreasonable force claim, and that's what the jury followed in awarding and finding that unreasonable force was used. So we think that if the court goes through the exegesis, and I hope I'm pronouncing that right, that the court is supposed to go through in trying to reconcile this verdict, that the jury, the verdict is very easily reconcilable in the manner that Judge Shea reconciled it. And in fact, there is the Maurer case that is cited in the brief in which the Ninth Circuit has previously reconciled a verdict in a fraud case based on the specific nature of the intent required. And so we think that the verdict is reconcilable on those issues. I would also like to emphasize to this court that the jury heard each and every one of these defendants be impeached with their own police reports, with their own deposition testimony, and the jury was absolutely free to disregard these officers' testimony on that basis. The essential fact here is that there was a jury question presented in this case as to what happened. As soon as Sergeant Dottke said right after the events in question, Cone should not have released the dog. No force was justified. That's Dottke's testimony. From his report, this was not a justified use of force. That's Dottke's testimony that contradicts Cone. Cone, in turn, contradicts Dottke by saying, all of my supervisors know that in the end it could be either or, either or, on the leash or off the leash whenever I'm using the dog. My superiors know that. Plus, of course, we have Benally and Quackenbush, I think it was Quackenbush that testified that, yes, we knew that Deke had bitten a lot of suspects before. He was an outstanding police dog. That's the mindset of these officers that come in here and ask this court to overrule what a jury decided. And this isn't some liberal runaway jury. This isn't from Seattle or San Francisco. This is the farming country, the nuclear plant in eastern Washington, a conservative jury. Are you impugning our juries here? As I got halfway into that, I started worrying that that might be the perception. But, you know, frankly, we thought that we could end up with a much larger verdict than this. We thought that this jury was very conservative, both in its rulings on liability and in its award of damages. But they did send a message to these defendants with their punitive damage award that this type of behavior is beyond the pale. You don't bring out the bite-and-hold canine and release him to seize a misdemeanor, not even a misdemeanor. This was a traffic offender that just didn't stop. They tried to stretch it into a misdemeanor. They tried to stretch it into a felony. The jury told them, no, we're not going to allow you to do that. And I would further ask this court on the sanctions motions to tell these defendants not to do these kind of appeals anymore, not to appeal, not to force plaintiffs like Mr. Rogers to wait for two more years to receive the justice that they deserve. Not to make Mr. Rogers wait for two more years, not to make opposing counsel go through 2,000 pages of testimony, to rebut arguments that Mr. Rogers never complained that he was in pain when he was beaten, bloody. And, in fact, the defendant that made that argument himself testified at trial that Mr. Rogers complained. And I would further ask this court on the sanctions motions to tell these defendants not to do these kind of appeals anymore, not to appeal, not to force plaintiffs like Mr. Rogers to wait for two more years to receive the justice that they deserve. And I would further ask this court on the sanctions motions to tell these defendants not to do these kind of appeals anymore, not to force plaintiffs like Mr. Rogers to wait for two more years to receive the justice that they deserve. And I would further ask this court on the sanctions motions to tell these defendants not to do these kind of appeals anymore, not to force plaintiffs like Mr. Rogers to wait for two more years to receive the justice that they deserve. Thank you, counsel. Thank you to both counsel. That completes our calendar for the week. This court is adjourned. This case is submitted for decision.
judges: Fletcher, Rawlinson, Ezra